ORDERED.

**Dated: October 16, 2020**

Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | Case No. 6:20-bk-01346-KSJ |
| ) | Chapter 11 |
| Ellingsworth Residential Community ) | |
| Association, Inc., ) | |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION
## CONFIRMING DEBTOR'S PLAN OF REORGANIZATION

Debtor, Ellingsworth Residential Community Association, Inc., seeks confirmation[1] of its Plan of Reorganization, as modified (collectively the "Plan").[2] Under the Order Scheduling Hearing on Confirmation of Plan and Establishing Deadlines, the Debtor timely filed its Ballot Tabulation[3] and Confirmation Affidavit ("Confirmation Affidavit").[4] After considering the evidence, testimony, and legal argument, the Court will confirm the Plan.

---

[1] The trial occurred on August 21 and September 10, 2020. (The trial originally was scheduled to start on August 19, 2020 and was reset to August 21, 2020.)
[2] The Debtor filed the Plan on June 1, 2020 (Doc. No. 54), which was modified on August 13, 2020 (Doc. No. 250), and August 20, 2020 (Doc. No. 270). The Debtor's Final Plan of Reorganization which incorporates the modifications is Doc. No. 294.
[3] Doc. No. 266.
[4] Doc. No. 267.

1

Debtor is a homeowner's association representing 80 homes in three developments. They have a gate, common area property, and a fountain but no other amenities, such as a pool, community center, or playground. All 80 homeowners pay the same quarterly assessment of $420.

In 2016, the developer, Meritage Homes, managed the Debtor and, acting on behalf of the Debtor, sued Alice Guan in Florida State Court.[5] Guan owns a home in one of the managed developments and allegedly had violated association rules relating to landscaping on her property. In 2019, after years of extensive litigation, the Florida State Court dismissed the Debtor's lawsuit directing the Debtor to pay Guan's attorneys' fees and costs. Before the Florida State Court could assess these fees or resolve Guan's multi-count counterclaim (collectively the "Claims"),[6] the Debtor filed this Chapter 11 bankruptcy case under the Small Business Reorganization Act on March 3, 2020.[7]

The Small Business Reorganization Act ("SBRA"), enacted in August 2019, became effective on February 19, 2020.[8] It is commonly called Subchapter V because all of its provisions are contained in Subchapter V of Chapter 11 of the Bankruptcy Code.[9] The new law was designed to help small businesses reorganize by streamlining the cumbersome and often expensive process of a typical Chapter 11 reorganization case.[10] The statutory hope is that by encouraging small business reorganizations more creditors will receive greater distributions, debtors will pay less in attorneys' fees, and more small businesses will survive and prosper.[11]

---

[5] The Florida State Court action is *Ellingsworth Residential Community Association, Inc. v. Alice Guan*, Case No. 2017-CA-002697 pending before the Circuit Court for Seminole County, Florida.
[6] Guan's alleges she has counterclaims against the Debtor for (I) Abuse of Process, (II) RICO, (III) Intentional Infliction of Emotional Distress, (IV) Negligence, (V) Breach of Contract and (VI) Declaratory Judgment.
[7] Doc. No. 1.
[8] Small Business Reorganization Act of 2019, Pub. L. No. 116-54, 133 Stat. 1079 (2019).
[9] §§1181 – 1195 of the Bankruptcy Code. All references to the Bankruptcy Code refer to 11 U.S.C. §§ 101 *et. seq*.
[10] *In re Ventura*, 615 B.R. 1, 12 (Bankr. E.D. N.Y. 2020).
[11] The Court previously has determined that the Debtor is eligible to file this case under SBRA. Doc. No. 142.

Many of the new procedures allow for a quick confirmation of a plan of reorganization. No disclosure statement is required.[12] Strict timelines require parties to quickly move the case forward. And, by abrogating the "absolute priority rule"[13] on *unsecured* creditors, debtors may confirm a plan without creditor support and still retain property, even though unsecured creditors, such as Guan, potentially are not paid in full.[14]

Guan opposes confirmation of the Plan. Under Subchapter V, a small business debtor may confirm a plan of reorganization even if *all* creditors reject the proposed plan treatment provided the debtor meets certain requirements under § 1129(a) and § 1191 of the Bankruptcy Code. Section 1191(b) governs confirmation of a non-consensual plan under Subchapter V. It provides the court *shall* confirm a non-consensual plan, if it is "fair and equitable" to each class or interests that is impaired or has not accepted the plan, does not discriminate unfairly, and except for the acceptance by each class or interests (including acceptance by one class of impaired claims), meets the requirements of § 1129(a).[15]

Section 1191(c) defines the "fair and equitable" prong for non-consensual plans under Subchapter V. Because Guan holds an unsecured claim,[16] the "fair and equitable" requirement is met if:

---

[12] *See* 11 U.S.C. § 1181(b).
[13] 11 U.S.C. § 1129(b)(2)(B).
[14] 11 U.S.C. § 1191(b),(c).
[15] 11 U.S.C. § 1191(b). Section 1191(b) provides:
    **(b) Exception**.—Notwithstanding section 510(a) of this title, if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.
[16] With respect to secured claims, the plan must also meet the requirements of § 1129(b)(2)(A) to be fair and equitable. *See* 11 U.S.C. § 1191(c)(1).

- The plan provides that the debtor's projected disposable income[17] received in a three-year period, or such longer period not to exceed five years, is applied to make payments under the plan;[18]

- There is a reasonable likelihood the debtor can make all plan payments;[19] and

- The plan provides remedies to protect the holder of claims or interests if payments are not made.[20]

To determine whether the Debtor's plan is fair and equitable, the term "disposable income" here means the income received by the debtor not reasonably necessary to be expended "for the payment of expenditures necessary for the continuation, preservation or operation" of the debtor's business.[21]

Debtor has proposed a plan of reorganization.[22] The Plan is simple—it provides for the payment of allowed administrative, priority claims and unsecured claims over three years. The Debtor has no secured creditors. Article IV, paragraph B of the Plan, which describes payments to the Debtor's unsecured creditors, provides a Creditors' Trust will be created from which unsecured creditors will receive payment, *pro rata*, of their allowed claims. On the effective date, the Creditors' Trust shall consist of (i) 25% of all accounts received that become older than 90 days past due for three years, (ii) net proceeds received from all Causes of Action, and (iii) net disposable income for three years, including a special assessment of $300,000, to make these payments. Attached to the Plan is the Debtor's Projected Disposable Income, which projects $16,000 of funds available to the Creditors' Trust over three years, not including the $300,000 special assessment. If a default occurs, the Plan provides for a ten day cure period, and should the

---

[17] Here, the Debtor's disposable income includes the Debtor's income received from all sources.
[18] 11 U.S.C. § 1191(c)(2). A non-consensual plan is also "fair and equitable" if it provides the value of property to be disbursed under the plan in a three year period, or such longer period not to exceed five years, is not less than the projected disposable income.
[19] 11 U.S.C. § 1191(c)(3)(A).
[20] 11 U.S.C. § 1191(c)(3)(B).
[21] 11 U.S.C. § 1191(d)(2).
[22] Doc. No. 294.

Debtor fail to cure, the claimholder may seek relief from this Court to enforce the Plan or seek relief available under federal or applicable state law.[23]

The Court specifically finds that the Plan is fair and equitable under §1191 of the Bankruptcy Code. Debtor is devoting *more* than its projected disposable income by agreeing to the $300,000 special assessment on its members. Debtor is proposing a way to maximize payments to its creditors while still paying its on-going expenses. There is a high likelihood the Debtor will make these payments. And, if the payments are not made, the Plan provides adequate remedies to protect creditors' claims. And the Subchapter V Trustee will monitor the Debtor's operations for three years, receive the Debtor's net disposable income, and then distribute payments to creditors as required by the Plan. The Plan is in the best interests of all creditors, including Guan.

During this case, Guan, who is representing herself and has no legal experience, filed numerous papers, some of which object to confirmation of the Debtor's Plan.[24] The papers are lengthy and sometimes difficult to understand but raise three primary objections to confirmation of the Plan, which I overrule.

First, Guan alleges the Debtor has not provided sufficient financial information to justify confirmation of its Plan. As opposed to the traditional Chapter 11 case, no formal disclosure statement is required in a SBRA case. Under §1190 of the Bankruptcy Code,[25] SBRA plans must include "a brief history of the business operations of the debtor," a "liquidation analysis," "projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization" and "provide for the submission of all or such portion of the future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for

---

[23] Doc. No. 294, Article VII, Par. R.
[24] Guan's objections to confirmation are contained in Doc. Nos. 147, 149, 167, 180, 182, 253, 257, 260, 268, 272, 297, and 304.
[25] All references to the Bankruptcy Code refer to 11 U.S.C. S 101 *et seq*.

5

execution of the plan."[26] The Debtor's Plan complies with all these requirements. A disclosure statement with the detailed information Guan requests is not required.[27] Nor is the Debtor or its professionals required to provide the detailed financial information Guan seeks.

Second, Ms. Guan argues the Debtor's members—the 80 homeowners—must provide her with their *personal* financial information to demonstrate what income the Debtor can contribute to the Plan Payment. This objection has no merit. Debtor is a corporation. Courts generally uphold the corporate form to maintain its limited liability purpose because "[e]very corporation is organized as a business organization to create a legal entity that can do business in its own right and on its own credit as distinguished from the credit and assets of its individual stockholders."[28] Ms. Guan has not demonstrated the corporate veil should be pierced,[29] or the Debtor's corporate form disregarded. By extension, Guan's argument would require shareholders in every corporate bankruptcy to provide personal financial information before the corporation could confirm a Chapter 11 plan. Such is not the case. The personal financial circumstances of the Debtor's 80 members do not affect the confirmation of the Plan.

Third, Guan objects to confirmation of the Plan because it is not feasible insofar as the 80 members have not yet approved the promised $300,000 special assessment. To be fair and equitable under § 1191(b), the Court must determine there is a *reasonable likelihood* the debtor

---

[26] 11 U.S.C. § 1190 (1),(2).

[27] See 11 U.S.C. § 1181 (b). Unless the court for cause orders otherwise, section 1125 does not apply to a case filed under Subchapter V.

[28] *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1120 (Fla.1984)). *See also Anderson v. Abbott*, 321 U.S. 349, 362 (1944).

[29] To pierce the corporate veil under Florida law, the claimant has the heavy burden to prove, by a preponderance of the evidence, that: (1) the shareholder dominated and controlled the corporation to such an extent that the [corporation's] independent existence, was in fact non-existent and the ... shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant. *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 469-69 (Bankr. M.D. Fla.1994) (*citing Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So.2d 1114 (Fla.1984); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260 (D. Del. 1989)).

can make all plan payments. And under § 1129(a)(11), also made applicable by § 1191(b),[30] the Court must find that the plan "is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." In sum, I must find that the Debtor can live up to its promises made in its Plan.

Debtor has proven through its papers and the testimony of its President, Mike Panke, that the Plan is feasible. Debtor's members previously have approved large special assessments. Debtor's President says he can get the votes for the $300,000 special assessment. The Court believes he can procure the funds to pay the allowed unsecured claims. Nothing requires the Debtor to schedule that vote before confirmation. The Court therefore will overrule all of Guan's objections to confirmation.

However, the Court will require the Debtor and its members to do what it promised under Article IV, paragraph B. 1. of the Plan, which provides for the $300,000 special assessment, "*if approved.*" To find the Plan "fair and equitable" under § 1191 of the Bankruptcy Code, the Court will require more than just a "promise" to pay. Debtor must approve the promised special assessment of $300,000 within a reasonable time after confirmation. If the Debtor does *not* obtain the approval by the post-confirmation status conference, scheduled for February 25, 2021, the Court will find the Debtor in breach of the Plan.

So, if the members want to forever and finally resolve these outstanding disputes with Guan and their other creditors and to stop this endless litigation, they must approve and then pay the promised special assessment of $300,000. Failure to approve the special assessment will constitute a material default of the Plan.

---

[30] 11 U.S.C. § 1191(b), supra note 15.

Upon consideration of the Confirmation Affidavit, the Ballot Tabulation, Liquidation Analysis, and the Plan, as modified, the testimony of the Debtor's President, Michael Panke, Debtor's admitted Exhibits 1 through 8, the testimony of Guan and her admitted exhibits, and the parties' arguments at the Confirmation Hearing, the Court finds that the modifications to the Plan are nonmaterial or do not adversely change the treatment of the claim of any creditor or equity interest holder, that the Debtor has proposed the Plan in good faith having utilized multiple methods of payment to unsecured creditors, that no further solicitation of the Plan is required, and all the requirements of. § 1191 of the Bankruptcy Code are satisfied.

The Plan is confirmed.  Guan's objections are overruled.  A separate order confirming the Plan consistent with this Memorandum Opinion shall be entered.

###

Attorney Daniel A. Velasquez is directed to serve a copy of this order on all interested parties and file a proof of service within three (3) days of entry of the order.