ORDERED.

**Dated:  August 20, 2021**

Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | Case No. 6:20-bk-01346-KSJ |
| | ) | Chapter 11 |
| Ellingsworth Residential Community | ) | |
| Association, Inc., | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## MEMORANDUM OPINION ON DEBTOR'S
## OBJECTIONS TO CLAIMS 4-3 AND 5-2 FILED BY ALICE GUAN

Alice Guan ("Guan"), *pro se*, has filed two claims against Debtor, Ellingsworth

Residential Community Association, Inc.—Claim 4-3 for attorneys' fees and costs

incurred during state court litigation and Claim 5-2 for $1,600,000 for additional

damages against Debtor.[1] Debtor has objected to both claims.[2] The Court will disallow

Claim 5-2 in full and partially allow Claim 4-3 for $377,496.60.[3]

---

[1] Claim 5-2 is duplicative insofar as it includes the same attorneys' fees requested in Claim 4-3.
[2] Amended Omnibus Objection to Allowance of Claims 4-3 and 5-2 Filed by Alice Guan, Doc. No. 313.
[3] A trial was held on February 25, 2021. The Court heard testimony from Guan and Michael Panko, the President of Debtor. Doc. No. 687. Guan was unable to proceed due to health concerns. The parties have filed written closing statements. Doc. Nos. 688 and 690. In addition, Guan's former attorneys have substantiated their attorneys' fees and costs in separate affidavits. Doc. Nos. 733, 736-741. No further evidence is needed.

## **Debtor and Guan's Background**

Debtor is a homeowner's association representing 80 homes in three developments. They have a gate, common area property, and a fountain but no other amenities, such as a pool, community center, or playground. All 80 homeowners pay the same quarterly assessment of $420 and are subject to the Declarations of Covenants, Conditions and Restrictions for Ellingsworth dated September 12, 2013 (the "Declarations").

On February 25, 2016, the developer, Meritage Homes, managed Debtor and, acting on behalf of Debtor, sued Guan in Florida State Court (the "State Court Lawsuit").[4] Guan owns a home in one of the managed developments and allegedly had violated certain association rules relating to landscaping on her property.[5] Guan filed counterclaims for abuse of process, violation of the Florida civil Racketeer Influenced Corrupt Organizations ("RICO") statute, intentional infliction of emotional distress, negligence, breach of contract, and declaratory relief.[6]

During the State Court Lawsuit, Guan argued Debtor had failed to pursue arbitration before filing the lawsuit as required in Debtor's Declarations. The trial court denied this argument. Guan appealed; and the Fifth District Court of Appeal

---

[4] The State Court Lawsuit was initially filed in Seminole County Court. Complaint, *Ellingsworth Residential Cmty. Ass'n v. Guan*, No. 2016-CC-000630 (Fla. Seminole Cnty. Ct. Feb. 25, 2016). In 2017, the State Court Lawsuit was transferred to Seminole County Circuit Court and was redocketed. Certified Copy of Order to Transfer with Entire Court File from County Court, *Ellingsworth Residential Cmty. Ass'n v. Guan*, No. 2017-CA-002697 (Fla. 18th Cir. Ct. Dec. 8, 2017).

[5] Trial Tr. 49:2-5, 54:2-7, Doc. No. 687.

[6] Debtor's Ex. 16.

reversed.[7] Following reversal, the trial court dismissed Debtor's lawsuit, held Guan was entitled to attorneys' fees and costs, and retained jurisdiction to determine attorneys' fees and costs incurred between February 25, 2016, when the State Court Lawsuit was filed, and January 29, 2020.[8] Debtor then filed this Chapter 11 bankruptcy case on March 3, 2020,[9] before the trial court could award attorneys' fees and costs or resolve Guan's pending counterclaims.

## Debtor's Bankruptcy Case

Debtor proposed a plan of reorganization.[10] The plan is simple—it provides for the payment of allowed administrative, priority claims and unsecured claims over three years. Debtor has no secured creditors. Article IV, paragraph B of the Plan, which describes payments to Debtor's unsecured creditors, provides that a Creditors' Trust will be created from which unsecured creditors will receive payment, pro rata, of their allowed claims. On the effective date, the Creditors' Trust shall consist of (i) 25% of all accounts received that become older than 90 days past due for three years, (ii) net proceeds received from all Causes of Action, and (iii) net disposable income for three years, including a special assessment of $300,000, to make these payments. Attached to the Plan is Debtor's Projected Disposable Income, which projects $16,000

---

[7] Guan's Ex. 8 at 27-30; *Guan v. Ellingsworth Residential Cmty. Ass'n*, 278 So. 3d 840, 842 (Fla. 5th DCA 2019) (concluding Ellingsworth waived its claims against Guan when it failed to submit the dispute to arbitration within thirty days after termination of mediation and remanding to the trial court with directions that Ellingsworth's claim against Guan be dismissed with prejudice).

[8] Debtor's Ex. 15; Guan's Ex. 1.

[9] Doc. No. 1.

[10] Debtor filed the Plan on June 1, 2020, which was modified on August 13, 2020, and August 20, 2020. Doc. Nos. 54, 250, and 270. Debtor's Final Plan of Reorganization, which incorporates the modifications, is Doc. No. 294.

of funds available to the Creditors' Trust over three years, not including the $300,000 special assessment.

During the bankruptcy case, Guan, who represents herself and has no legal experience, filed numerous conflicting and confusing papers, some of which objected to confirmation of Debtor's Plan.[11] For the reasons stated in the Memorandum Opinion Confirming Debtor's Plan of Reorganization, on October 16, 2020, I found Debtor satisfied all the requirements of § 1191 of the Bankruptcy Code,[12] and confirmed Debtor's Plan of Reorganization over Guan's objections.[13] In the Order Confirming Debtor's Plan, this Court retained "jurisdiction for any matters that may come before the Court in the administration or enforcement of the Plan and or this order including, but not limited to, the jurisdiction to determine all objections to claims of creditors."[14]

### Guan's Claims

Guan filed two unsecured proofs of claim.[15] Amended Claim 4-3 requests attorneys' fees and costs of $500,000 incurred in the State Court Lawsuit, the pre-litigation mediation between Guan and Debtor, and in this bankruptcy case. Guan's Amended Claim Number 5-2 requests the same attorneys' fees and additional damages against Debtor of $1,600,000.

---

[11] Doc. Nos. 147, 149, 167, 180, 182, 253, 257, 260, 268, 272, 297, and 304.

[12] Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

[13] Doc. Nos. 340 and 341. Guan has filed an appeal of the confirmation order, which remains pending. Doc. No. 347.

[14] Doc. No. 340 at 5.

[15] Both of Guan's initial claims were filed May 12, 2020. The operative amended claims, Claim 4-3 and Claim 5-2, were filed on June 26, 2020. The claims are timely.

Under § 502(a) of the Bankruptcy Code, a timely proof of claim filed in proper form is deemed allowed unless a party in interest objects. Federal Rule of Bankruptcy Procedure 3001(f) provides that a proof of claim executed and filed under the Federal Rules of Bankruptcy Procedure shall constitute prima facie evidence of the validity and amount of the claim. The burden then shifts to the debtor to show the claim is incorrect.[16] If the debtor meets the burden of responding to the prima facie, the burden shifts back to the creditor to prove the existence and amount of the claim.[17]

Section 502(b)(1) provides:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that--
(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

To determine the allowance of a proof of claim under § 502(b)(1), courts will often look to state law.

"'[C]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code.' That principle requires bankruptcy courts to consult state law in determining the validity of most claims."[18] "[A] claim

---

[16] *In re Bean*, 252 B.R. 570, 573 (Bankr. M.D. Fla. 2000).
[17] *Id.* (citing *Vines v. IRS (In re Vines)*, 200 B.R. 940, 948 (M.D. Fla. 1996)).
[18] *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-51, 127 S. Ct. 1199, 1204-05 (2007) (internal citation omitted) (quoting *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20, 120 S. Ct. 1951, 1955 (2000)).

against the bankruptcy estate will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy."[19]

### Claim 4-3: Guan's State Court Attorneys' Fees

Following the Fifth District Court of Appeal's reversal and award of appellate attorneys' fees, the trial court dismissed Debtor's lawsuit and awarded Guan reasonable attorneys' fees and costs.[20] Before the trial court could determine these exact fees, Debtor filed this bankruptcy case.

Guan timely filed Claim 4-3 for $500,000 seeking reimbursement of monies she paid her former lawyers in the State Court Lawsuit. Guan also seeks reimbursement of her pre-litigation meditation costs and her bankruptcy attorneys' fees. Debtor objects to Claim 4-3 as deficient, unreasonable, and duplicative.[21]

Rather than pursue mandatory arbitration as dictated by Debtor's Declaration, Debtor sued Guan in state court on February 25, 2016. Debtor chose the forum and forced Guan to litigate in state court. The Fifth District Court of Appeals later found the lawsuit improper, directed the trial court to dismiss the action, and awarded Guan reasonable attorneys' fees and costs.[22] The trial court dismissed the case on October 8, 2019,[23] and, on January 29, 2020, determined Guan is entitled to reasonable attorneys' fees and costs incurred at the trial level.[24] I find the entitlement period to award attorneys' fees and costs runs from February 25, 2016, when the State Court Lawsuit

---

[19] *United States v. Sanford (In re Sanford)*, 979 F.2d 1511, 1513 (11th Cir. 1992).
[20] Debtor's Ex. 15; Guan's Ex. 1.
[21] Amended Omnibus Objection to Allowance of Claims 4-3 and 5-2 Filed by Alice Guan, Doc. No. 313.
[22] Guan's Ex. 182.
[23] Debtor's Ex. 15.
[24] Guan's Ex. 1.

was filed, to January 29, 2020, when the trial court awarded Guan trial level fees and costs.[25]

The state court litigation was intense, lasted over three years, and involved six sets of attorneys representing Guan. She likely is a difficult client to represent. Guan incurred substantial attorneys' fees and costs opposing Debtor's lawsuit and ultimately succeeded. Debtor could have avoided these costs simply by proceeding first to arbitration and following its own rules. Debtor chose unwisely and now must reimburse Guan for *all* fees and costs she incurred during the entitlement period.

To fairly determine these fees and costs, this Court—with the valuable assistance of the Subchapter V Trustee, Todd Budgen—requested Guan's former attorneys to file affidavits listing fees incurred during the State Court Lawsuit.[26] The requested affidavits were filed,[27] and the Court has organized the relevant[28] information into this chart:

---

[25] These are the dates from the initiation of the 2016 State Court Lawsuit to the date of the State Court's order finding that Guan is entitled to fees and costs associated with the State Court proceedings. Guan's Ex. 1.
[26] Doc. No. 728.
[27] Doc. Nos. 733-1, 736-1, 737-1, 738-1, 740-1, and 741-1.
[28] While additional information was requested and supplied by the attorneys regarding fees incurred before and after the relevant time period, the chart reflects the fees and costs incurred during the applicable period—February 25, 2016, to January 29, 2020.

| Attorney | Attorney Hourly Rate | Total Amount Billed Prior to Reduction | Amount of Invoice Reduced | Total Paid by Guan | Unpaid Amount |
|---|---|---|---|---|---|
| John Zielinski | $400 p/hour | $122,098.86 | $11,588.86 | $113,795.26 | $0 |
| Peter R. McGrath | $300 p/hour | $8,353.75 | $670.75 | $7,683 | $0 |
| Dorothy F. Easley | $400 p/hour | $308,833.10 | $110,775 | $198,058.10 | $0 |
| Frederic B. O'Neal | $300 p/hour | $45,361.26 | $15,810 | $29,551.26 | $0 |
| Eric P. LaRue, II | $225 p/hour | $11,730 | $0 | $11,730 | $0 |
| Edward P. Jordan | $350 p/hour | $16,678.98 | $0 | $16,678.98 | $0 |

The Court tested the fees sought by Guan's lawyers under the *Johnson* lodestar analysis that initially multiplies an attorney's reasonable hourly rate by the number of hours reasonably expended.[29] Several attorneys substantially reduced their final

---

[29] A determination of whether these fees are reasonable requires the Court to consider the number of hours that could be reasonably expended on the litigation and then multiply that hourly figure by a reasonable hourly rate. This is known as the "lodestar method." *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 879 (11th Cir. 1990). In conducting this analysis, the Court considers the twelve factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Those twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717-19. The Court considered each applicable *Johnson* factor in reviewing the fees requested.

invoice. These reductions total $138,844.61. And each attorney confirmed Guan has paid their final invoices, totaling $377,496.60. This is the loss Guan has suffered by Debtor's actions and the amount she may recover.

After review of the record, the billing invoices admitted into evidence,[30] and the parties post-trial filings,[31] and summary affidavits[32] submitted by Guan's former counsel during the 2016 State Court Lawsuit and subsequent appeal, I specifically find the attorneys' fees and associated costs are reasonable, all work was performed in the State Court Lawsuit during the entitlement period, and Guan is entitled to reimbursement of $377,496.60.[33]

I further find Debtor's objection that the fees are unreasonable, duplicative, or otherwise objectionable is without merit and is overruled. For example, Debtor asserts the fees of Mr. Zielinski were not specifically addressed by the Florida state courts and are not awardable. However, Debtor acknowledges Mr. Zielinski represented Guan on her state court appeal during the relevant timeframe. Their objection rings hollow when the primary concern is that the state court never entered a separate order on their fee request.

Guan also requests reimbursement of attorneys' fees and costs she incurred in mediation with Debtor *before* the State Court Lawsuit was filed and during this bankruptcy case. She may not recover these fees. "Under the traditional 'American

---

[30] Debtor's Exs. 1-9.
[31] Doc. Nos. 688 and 690.
[32] Doc. Nos. 733-1, 736-1, 737-1, 738-1, 740-1, and 741-1.
[33] *Martinez v. Giacobbe*, 951 So. 2d 902, 904 (Fla. 3d DCA 2007); *Dvorak v. First Family Bank*, 639 So. 2d 1076, 1078 (Fla. 5th DCA 1994).

rule,' attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor."[34] As previously stated, Guan is entitled to her attorneys' fees and costs associated with the State Court Lawsuit and appeal from the commencement of the case until the entry of the last order awarding fees. However, Guan *is not* entitled to attorneys' fees and costs for work done pre-litigation or after the dismissal of Debtor's State Court Lawsuit, including any work done on Guan's affirmative claims for damages against Debtor or in this bankruptcy case. Given that there is no statute or agreement by the parties to the contrary, Guan will bear the cost of her own legal fees and expenses for all work done outside the entitlement period.[35]

Debtor's objection[36] to Claim 4-3 is partially sustained to exclude Guan's claim for attorneys' fees and costs outside the entitlement period (February 25, 2016, to January 29, 2020) or outside the scope of reimbursable services. Debtor's objection to Claim 4-3 is otherwise is overruled. Claim 4-3 is allowed for $377,496.60.

## Claim 5-2: Guan's Affirmative Claims against Debtor

In Claim 5-2, Guan asserts a general unsecured claim for damages against Debtor for $1.6 million.[37] She often calls these her "counterclaims" because she filed them in response to Debtor's improper State Court Lawsuit. In her declaration, filed on February 16, 2021, Guan acknowledges she asserts these three claims (or counterclaims) against Debtor: (1) abuse of process, (2) violation of the Florida RICO

---

[34] *Rothenberg v. Sec. Mgmt. Co.*, 736 F.2d 1470, 1471 (11th Cir. 1984) (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717, 87 S. Ct. 1404, 1407 (1967)).
[35] *See id.* (citing *Fleischmann Distilling Corp.*, 386 U.S. at 717, 87 S. Ct. at 1407).
[36] Amended Omnibus Objection to Allowance of Claims 4-3 and 5-2 Filed by Alice Guan, Doc. No. 313.
[37] Claim 5-2 also includes the same attorneys' fees and costs sought in Claim 4-3, discussed above. To that extent, Claim 5-2 is duplicative of Claim 4-3.

statute, and (3) intentional infliction of emotional distress.[38] All three claims request damages mostly because Debtor sued her in state court rather than pursued arbitration.

At trial, on February 25, 2021, Guan attempted to add two new claims against Debtor for malicious prosecution and tortious interference with the performance of a contract.[39] Because of Guan's history of confusing pleadings and practice of raising new claims at the last minute and during hearings, the Court earlier had precluded her from further amending her claims.[40] As such, these two new claims are barred, and the Court will not consider them. That leaves Guan's three claims for abuse of process, RICO violation, and intentional infliction of emotional distress to discuss.

### *Abuse of Process*

In her abuse of process claim, Guan asserts Debtor had an "ulterior motive" in filing and pursuing its State Court Lawsuit.[41] Essentially, Guan argues she had construction defect claims against Meritage, and Debtor, who was then controlled by Meritage, used litigation to pressure her into "waiv[ing] her claim against Meritage."[42]

A cause of action for abuse of process requires a plaintiff to prove that: "(1) the defendant made an illegal, improper, or perverted use of process; (2) the defendant had an ulterior motive or purpose in exercising the illegal, improper or perverted process; and (3) the plaintiff was injured as a result of defendant's action."[43] "There is no abuse

---

[38] Doc. No. 457 at 6. Guan acknowledges her declaratory relief claim was dismissed by the state court, and she affirmatively withdrew her claims for negligence and breach of contract. This Court, on September 11, 2020, precluded Guan from filing any further amended claims, Doc. No. 308, so no further counterclaims may be added.

[39] Trial Tr. 40:20-42:6, Doc. No. 687; *see also* Doc. No. 457 at 6-7, 9-10.

[40] Case Management Order on Objection to Ms. Guan's Claims ¶ 1, Doc. No. 308 (entered Sept. 11, 2020).

[41] Debtor's Ex. 16.

[42] Debtor's Ex. 16.

[43] *Thomson McKinnon Sec., Inc. v. Light*, 534 So. 2d 757, 760 (Fla. 3d DCA 1988).

of process, however, when the process is used to accomplish the result for which it was created, regardless of an incidental or concurrent motive of spite or ulterior purpose."[44] "Moreover, if there is 'a reasonable basis in law and fact to initiate the judicial proceedings, then [such] processes [are] justified even though they may have served some other collateral purpose.' Merely participating in a proceeding is not abuse of process."[45]

Here, Debtor sued Guan, serving her with a summons and the state court complaint, because she arguably had violated certain rules relating to the landscaping on her property. Guan admits she changed her landscaping, and her landscaping modifications prompted the dispute.[46] Whether Debtor had an ulterior motive, Debtor sued to accomplish the result for which it was created: to get Guan to comply with the association's rules. Debtor merely served Guan with its complaint to seek a court order compelling Guan to comply with the community's landscaping rules. Guan fails to state a claim for abuse of process.[47]

Although Debtor should have pursued arbitration instead of litigation, the key is that Debtor was enforcing its Declarations, albeit in an improper forum, to get Guan to comply. Debtor properly served its lawsuit to get Guan to follow the community rules.

---

[44] *Scozari v. Barone*, 546 So. 2d 750, 751 (Fla. 3d DCA 1989).

[45] *Cox-Tanner v. Taylor, Bean, & Whitaker Mortg. Corp. (In re Taylor, Bean, & Whitaker Mortg. Corp.)*, No. 3:09-BK-7047-JAF, 2011 WL 5245420, at *3 (Bankr. M.D. Fla. Oct. 24, 2011) (alterations in original) (internal citation omitted) (first quoting *Scozari*, 546 So. 2d at 752; then citing *Thomson McKinnon Sec.*, 534 So. 2d at 759-60).

[46] Doc. No. 690 at 9; Trial Tr. 54:2-7, Doc. No. 687.

[47] *See Scozari*, 546 So. 2d at 751; *see also Della-Donna v. Nova Univ., Inc.*, 512 So. 2d 1051, 1056 (Fla. 4th DCA 1987) ("[F]iling a lawsuit with the ulterior motive of harassment does not constitute abuse of process.").

Guan's testimony on events that happened before Debtor's lawsuit[48] is irrelevant for her abuse-of-process claim.[49] Guan presented no evidence of a misuse of *process* after the complaint was issued by Debtor, and she has failed to establish a basis for liability or damages for a claim of abuse of process.[50] No further evidence is needed, and no amount is recoverable on her claim for abuse of process. Guan simply has no such claim.

### *RICO Violation*

Guan next alleges Debtor has violated the Florida RICO statute by participating in a "scheme with the intent to defraud [her] and/or with the intent to foreclose on [her] property and/or obtain [her] property by false and/or fraudulent pretenses, representation, or promises of willful misrepresentation of a future act."[51]

Section 772.103 of the Florida Statutes makes it unlawful for any person "[t]hrough a pattern of criminal activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property," or for a person "[e]mployed by, or associated with, any enterprise to conduct or participate, directly

---

[48] Trial Tr. 117:8-124:5, 131:17-140:10, Doc. No. 687.

[49] *Marty v. Gresh*, 501 So. 2d 87, 90 (Fla. 1st DCA 1987) (holding that events before service of process which may have suggested malicious intent did not advance cause of action for abuse of process).

[50] *Cazares v. Church of Scientology of Cal., Inc.*, 444 So. 2d 442, 444 (Fla. 5th DCA 1983) ("[A]buse of process requires an act constituting the misuse of process after it issues. The maliciousness or lack of foundation of the asserted cause of action itself is actually irrelevant to the tort of abuse of process.").

[51] Guan also references the Florida Communications Fraud Act. However, she failed to establish or even truly address the requisite elements to show that Debtor engaged in organized fraud or communications fraud. Accordingly, any part of Guan's claim based on Florida Communications Fraud also fails as a matter of law. *See Gomez v. State*, 220 So. 3d 495, 498 n.4 (Fla. 3d DCA 2017) ("The Florida Communications Fraud Act sets forth two separate offenses—'organized fraud' under section 817.034(4)(a) and 'communications fraud' under section 817.034(4)(b)."); Fla. Stat. § 817.034(4)(a) ("Any person who engages in a scheme to defraud and obtains property thereby is guilty of organized fraud . . . ."); Fla. Stat. § 817.034(4)(b) ("Any person who engages in a scheme to defraud and, in furtherance of that scheme, communicates with any person with intent to obtain property from that person is guilty, for each such act of communication, of communications fraud . . . .").

13

or indirectly, in such enterprise through a pattern of criminal activity," or to conspire

to do so.[52] Section 772.104(1) provides civil remedies for violations of section 772.103.

Section 772.102 defines a "pattern of criminal activity" as "engaging in at least

two incidents of criminal activity that have the same or similar intents, results,

accomplices, victims, or methods of commission or that otherwise are interrelated by

distinguishing characteristics and are not isolated incidents."[53]

Guan's allegations stem from a single contract or transaction with Debtor—

Debtor assessed wrongful charges against her under Debtor's Declarations. "[T]o

bring a RICO action in Florida, a plaintiff has to show 'there has been some sort of

*ongoing* criminal behavior,'"[54] and "a plaintiff must plead the necessary predicate acts

or continuity of endeavor."[55]

Guan has demonstrated *no* criminal behavior much less any *ongoing* criminality.

She has alleged only one predicate act. And the only claimant is one party—Debtor.

There is no conspiratorial scheme, no RICO enterprise, and no pattern of racketeering

activity. Guan's RICO claim fails as a matter of law. No amount is recoverable on her

claim for an alleged violation of the Florida RICO statute.

### *Intentional Infliction of Emotional Distress*

Guan last alleges Debtor caused her emotional distress by pursuing its claim

against her and by trying "to force [her] to waive [her] rights" to hold Meritage liable

---

[52] Fla. Stat. § 772.103.
[53] Fla. Stat. § 772.102(4).
[54] *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 864 (Fla. 4th DCA 2012) (emphasis added) (quoting *Ginsberg v. Lennar Fla. Holdings*, 645 So.2d 490, 501 (Fla. 3d DCA 1994)).
[55] *Id.* (citing *Ginsberg*, 645 So. 2d at 501).

14

for construction defects to her home.[56] She also argues Debtor is responsible for intentional infliction of emotional distress because it failed initially to arbitrate its claims. Guan essentially argues she was emotionally harmed because Debtor sued her.

"The elements of a cause of action for intentional infliction of emotional distress are: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe."[57] "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[58]

Guan has failed to state a claim for intentional infliction of emotional distress.[59] The conduct of Debtor is analogous to the conduct of the defendant corporation and its agent in *Southland Corp. v. Bartsch*.[60] In that case, the Florida District Court of Appeal stated that a claim for intentional infliction of emotional distress cannot stand where the offending conduct is privileged; "the actor is never liable where he does no more than insist upon his legal rights in a permissible way, even though the actor is well aware that such insistence is sure to cause emotional distress."[61]

---

[56] Debtor's Ex. 16 at 48-50; Trial Tr. 61:11-23; Doc. No. 690 at 18-19.

[57] *Kendron v. SCI Funeral Servs. of Fla., LLC*, 230 So. 3d 636, 637 (Fla. 5th DCA 2017).

[58] *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985) (quoting Restatement (Second) of Torts § 46 (1965)).

[59] *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007) ("Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact.").

[60] *Southland Corp. v. Bartsch*, 522 So. 2d 1053 (Fla. 5th DCA 1988).

[61] *Id.* at 1056 (citing Restatement (Second) of Torts § 46(d) (1965)).

15

Debtor sued Guan to enforce its Declarations. Although the Fifth District Court of Appeal ultimately concluded arbitration not litigation was the proper forum, this alone does not show that its conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."[62]

The trial court agreed with Debtor, finding it could continue with litigation. And either forum—arbitration or litigation—is stressful for litigants. So, for Debtor to believe it could litigate without first pursuing arbitration is neither "outrageous" or "extreme." Debtor did make a mistake but, even if I found that Debtor exceeded the bounds of propriety by failing to arbitrate, which I do not, it is clear Debtor's conduct "simply does not rise to the level of outrageousness."[63]

And Guan has not demonstrated that the litigation *objectively* would cause a reasonable person to experience the "severe" emotional distress required to make out a claim for intentional infliction of emotional distress. To qualify as "severe," emotional distress must be "of such a substantial quality or enduring quality that no reasonable person in a civilized society should be expected to endure it."[64]

In her second amended complaint, which Guan repeatedly references in her closing statement, Guan alleged that Debtor's actions "aggravate[d] . . . a prior injury . . . [she] experienced in her abusive marriage."[65] Litigation always is stressful.

[62] *Metro. Life Ins.*, 467 So. 2d at 278-79.
[63] *See Food Lion, Inc. v. Clifford*, 629 So. 2d 201, 203 (Fla. 5th DCA 1993).
[64] *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1305 (Fla. 2d DCA 2018) (alterations omitted) (quoting *Kraeer Funeral Homes, Inc. v. Noble*, 521 So. 2d 324, 325 (Fla. 4th DCA 1988)).
[65] Debtor's Ex. 16 at 48.

16

Guan obviously has numerous and serious physical and mental challenges. Her divorce and attendant litigation may have scarred her. And her sensitivity may have aggravated her stress level. But courts do not look at the *individual* claimant's fragility in assessing the severity of an alleged injury. "[T]he subjective response of the person who is the target of the actor's conduct does not control the question of whether the tort occurred."[66]

Here, Debtor's only action was to sue Guan in state court instead of first going to arbitration over her compliance with Debtor's landscaping regulations. In no way does this constitute an intentional infliction of emotional distress. Guan fails to state a claim for intentional infliction of emotional distress

Guan has established no damage claim against Debtor under Claim 5-2. Debtor's objection[67] to Claim 5-2 is sustained. Claim 5-2 is disallowed.

### *Guan's Post Trial Motion for Additional Testimony*

Guan recently filed a motion seeking to introduce additional testimony at a continued trial on her two claims.[68] She wants her attorneys and doctors to testify in person and requests Debtor's attorneys testify to substantiate the fees they charged in the State Court Lawsuit. No additional evidence is required.

---

[66] *Southland Corp.*, 522 So. 2d at 1056.
[67] Amended Omnibus Objection to Allowance of Claims 4-3 and 5-2 Filed by Alice Guan, Doc. No. 313.
[68] Doc. No. 732. The motion is titled: Motion to Have Previous Attorneys Appear in Trial to Testify for the Counterclaim and to Testify to the Emails and Work Products and Invoices for the Complaint, Motion for Court to Obtain Affidavits from Doctor Scott Farmer and Dr. Maria Loranzo on the Medical Services They Provided and for Them to Appear in Trial to Testify in the Counterclaim, and Motion to Subpoena Debtor for Its Attorneys' Fees and Cost Incurred and Paid in the State Case, and Motion for All of My Fees and Cost.

Guan's attorneys' fees and costs were allowed without reduction, unless the fees were for work for which she has no entitlement for reimbursement, i.e., the work was completed before the litigation started, was to prosecute her affirmative claims against Debtor, or to represent her during the bankruptcy. So, the amount charged by Debtor for similar work is irrelevant.

And the Court need receive no evidence from Debtor's medical professionals or hear observations from her attorneys on her physical and mental challenges because all of Guan's other affirmative claims against Debtor were baseless and, as a matter of law, fail to state a claim. Guan's motion for additional testimony is denied.

### Conclusion

Claim 4-3 is allowed for $377,496.60 for the reasonable fees and costs associated with the State Court Lawsuit. Claim 5-2 is disallowed. A separate order consistent with this Memorandum Opinion shall issue.

### ###

Attorney Daniel A. Velasquez will serve a copy of this Order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the Order.